Marilyn J. Kamm
Department of Law
Criminal Division Central Office
P.O. Box 110300
Juneau, AK 99811
(907) 465-3428
FAX: (907) 465-4043
Alaska Bar No. 7911105
Attorney for Defendants
Hyden & Henry

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | | |
|---|---|---|
| CHARLIE J. DAVIS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ZEE HYDEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ ) | | Case No. A02-214 CV (JKS) |

### DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Come now defendants, Zee Hyden and Mel Henry, by and through their

attorney of record, Marilyn J. Kamm, Assistant Attorney General, and hereby move for

summary judgment pursuant to Civil Rule 56. This motion is supported by the

memorandum, *infra,* and by the Affidavits of Roger Hale, P.A. and Henry Luban, M.D.

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 1 of 24

# FACTS

## I.     THE AMENDED COMPLAINT.

Plaintiff Charlie Davis, Jr. "Davis" is a former inmate from Haines, Alaska. Haines is located 90 sea miles from Juneau, Alaska.  Its population varies from 1800 to 2800.  The nearest hospital is Bartlett Regional Hospital, in Juneau, Alaska.

Davis was incarcerated at Palmer Correctional Center "PCC" from on or about May 1, 2002, until approximately October 30, 2002.  He was a sentenced inmate at PCC, having pled guilty to the crime of Attempted Misconduct Involving a Controlled Substance in the 4th Degree in *State v. Davis*, Case No. 1JU-S01-1125 CR.  He was sentenced April 2, 2002.

Davis has filed suit against Zelmer Hyden "Hyden," former Acting Superintendent at PCC, and Mel Henry "Henry."   See docket 38.   Plaintiff alleges that Henry was the medical director for the Palmer Corrections Center responsible for supervising the medical treatment of inmates*. Id.,* p. 2.  Plaintiff alleges that he has a serious heart condition and that he was prescribed Coumadin, a blood thinning agent. According to his (Haines) doctor's orders, he was to have his blood checked (by a PT/INR test) every two weeks during his incarceration.  *Id*., p. 3.  He claims that he went approximately 27 days without having a PT/INR and that as a result his medication levels

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 2 of 24

were not properly controlled.  He also claims that on one or more occasions he was not given his medication despite his request.  *Id.,* p. 4.

He further alleges that Hyden and Henry had actual knowledge that his medical condition was not being properly monitored by June 13, 2002.  *Id.*, p. 4.  He claims that he filed a grievance on June 13, 2002, and that it was assigned to Roger Hale, P.A. for investigation.  He claims that Hyden denied his grievance without addressing his underlying medical concerns.  *Id.*, p. 5.

Davis appealed from the denial of his grievance.  He claims that Henry denied his appeal on September 5, 2002.  *Id.,* p. 5.  He claims that both defendants acted with deliberate indifference to his serious and life-threatening condition.  He also claims that inmate medical care at PCC was inadequate, and that defendants failed to provide adequate staffing or improve the medical training of PCC officials.  He claims that defendants deprived him of his rights under the due process clause of the Fourteenth Amendment.  *Id.*, p. 6.

Plaintiff claims that while he was incarcerated there he had blood pressure spikes, dizzy spells, nosebleeds and pain.  He also claims that he suffered from anxiety and psychological trauma.  *Id.*  He seeks an award of nominal, compensatory and punitive damages and declaratory and injunctive relief.  *Id.*, p. 7.

## II.    <u>THE GRIEVANCE AND GRIEVANCE APPEAL</u>.

### A.    <u>Plaintiff's Grievance</u>

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 3 of 24

On June 13, 2002, Davis filed a grievance. The date of the incident was June 5, 2002. The inmate wrote:

> Floor officer was unaware as to what type of medication I have for my heart condition and especially unaware of the seriousness of my medical conditions. My personal records show the dosage that I receive and my calendar chart shows the dates that I never had a PT/INR done, which is a total of twenty seven day's. This institution and its medical staff is well aware that my present medical condition is a life threatening one. And has failed to provide sufficient continuity of care, monitoring and follow-up medical treatment. This facility needs a full time registered nurse, licensed practical nurse 7 days a week and especially at night. Cite federal district court case U.S.C. (10th Cir. *Battle v. Anderson,* 564 F.2d at 403. Also the P&P's, AACs AS 44.28.030, AS 33.021, 22 AAC 05.155. That are consistent with laws for guidance government and administration of correctional facilities IV.B. Health Screening, B. Physical Examination, 2. Medical Records P. 2 of 3.

Exhibit A, Prisoner Grievance, p. 1.[1]

He requested the following relief:

> . . .that this administration comply with their P&Ps, AAC's, <u>Cleary</u> Final Settlement Agreement and Order, Provide full time qualified registered nurses, practical nurse 7 days a week and especially at night.

Exhibit A, p. 1.

B.    <u>The Investigation</u>.

PCC Physician Assistant Roger Hale was assigned the investigation of the grievance. He wrote that the issue of manning/staffing could not be addressed at the

---

[1] Although in his amended complaint and deposition plaintiff complained of high blood pressure spikes, dizziness, nosebleeds and pain, he made no mention of these symptoms

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 4 of 24

facility level.  He also noted that he spent about 20 minutes explaining to the inmate how

he could access the medical staff at PCC because they could provide adequate medical

treatment to him.  Exhibit A, p. 2.

Davis wanted PCC to hire a registered nurse and a licensed practical nurse,

and that they be available seven days a week and at night.  PCC already had two

registered nurses on its staff, Norma Tyler, R.N. and Lane Anderson, R.N.  PCC also had

a licensed practical nurse on its staff, Cora Benoit, L.P.N.  PA Hale advised him that the

issue of facility staffing could not be addressed through the filing of a prisoner grievance.

See Affidavit of Roger Hale, p. 3.

In his grievance Davis complained about his medical care and that it had

been 27 days since he had had a PT/INR test.  This test was given to him to determine the

appropriate dosage of Coumadin.  He believed that he needed to be tested more

frequently because his Haines physician had ordered a PT/INR test every two weeks.

However, in Hale's professional opinion he did not need to be tested that often.  Hale had

ordered that he be tested every 30 days per the community standard of care.  *Id.*

Hale told Davis that the staff at PCC was well-qualified to care

for his condition.  He had been prescribed several medications:  Coumadin, Lisinopril,

Prevacid, ASA, Plavix, Metoprolol, and Lipitor.   In 2002 there were two Physician

---

in his grievance or in his grievance appeal, nor did he submit cop-outs to PCC medical
staff with any of these symptoms after April 24, 2002.

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 5 of 24

Assistants at PCC:  Hale and Roger Hughes, P.A.  They worked one week on, one week off shifts.  PCC also had nurses on its staff.  Once a week Dr. Jim Billman or another physician visited the facility to see inmates.  *Id.*

Davis had received good, appropriate, medical care since his transfer to PCC.  On April 24, 2002 PA Hughes ordered a PT/INR test after reviewing his records.  On April 26, 2002, his blood was drawn for the test.  PA Hughes also saw Davis on April 26, 2002, because he had some nose bleeding.  He noted that he was on Coumadin and had picked his nose.  There was an area of excoriation on the left nasal septal wall.  PA Hughes encouraged him to avoid nose picking.  PA Hughes discontinued his prescription for ASA 325 mg.  He ordered ASA 81 mg per the community standard of care.   ASA is aspirin.  Since Davis was on Coumadin PA Hughes was concerned about ASA's additional blood thinning effect.  PA Hughes had instructed Davis to report any more nose bleeding.  *Id.*

PA Hughes reviewed the PT/INR results on April 28, 2002.  He ordered a multi-vitamin for Davis and that he have a complete blood count and PT/INR in 10 days.  He ordered him to continue his Coumadin as written.  *Id.*

Four days later, May 2, 2002, Hale saw Davis in clinic.  At that time he was complaining of left hip and leg pain for the past two weeks.  He said that he thought he had worked out too hard.  He had periodic cramping.  Hale examined his hip and leg, and ordered a muscle relaxant, Flexeril, for him for three days.  He also ordered heat, rest

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 6 of 24

and light exercise, and was told to return as needed.  Three days later, May 5, 2002, he

reported he was improved from his previous visit.  *Id.*

On May 8, 2002, his blood was drawn for another PT/INR.  His blood

pressure was also taken.  It was 148/90.  Dr. Billman reviewed his medical records and

recommended tightening his blood pressure control since the inmate was on Coumadin.

*Id.*, p. 5.

On May 10, 2002, he had another blood draw for a PT/INR test.  On May

12, 2002, the medical staff sent to the PCC security staff a memo regarding Davis's

defibrillator.  It explained that the implant regulated heart rate and rhythm and instructed

them that he was not to be searched with a hand held screening wand.  The memorandum

was accompanied by part of his defibrillator handbook explaining what items he should

avoid in more detail.  *Id.*

On May 19, 2002, PA Hale reviewed his prescription medications and the

Vital Signs Flow Sheet.  He noted that his prescriptions for Metaprolol and Coumadin

were good through July 7, 2002.  He ordered that a PT/INR be done in 30 days, and that

his blood pressure and weight be checked once a month.  *Id.*

On June 5, 2002, PCC received Davis's Guiac test results with negative

results.  This test is for occult blood.  If Davis had had significant nose bleeding,

this test would have shown positive for occult blood.  *Id.*

On June 17, 2002, PA Hughes ordered that his blood be drawn for a

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 7 of 24

PT/INR test.  He was paged to the office for his test on June 24th and initially was a "no show."  Later he appeared, and his blood was drawn.  *Id.*

Hale met with Davis on June 27th.  He informed him that no one at this level could address his manning issue of 24 hours a day nursing staff (which was all he was asking for when he met with him.)  After speaking with him for a short period of time it became clear to him that his main complaint was that he did not fully understand how to access the medical department of PCC and that was the reason he was not receiving the medical care he felt he needed.  He was failing to submit Request for Medical Care (cop-outs), required by Department of Corrections Policy and Procedure 807.02, Procedure A.2. to access medical staff.  *Id.*, p. 6.

Hale spent about 20 minutes explaining to Davis what he explicitly needed to do to obtain medical care while at PCC.  He also explicitly explained to him what not to do.  He explained that it was his personal responsibility to send a cop-out in writing each time he felt he needed any type of medical care.  Once medical received the cop-out, it was triaged.  He would then be seen by staff, if appropriate, who could prescribe lab tests and medication, refer him to the physician who visits PCC weekly, or refer him to a physician outside of the institution.  *Id.*

Hale also told Davis that he should not approach the medical or correctional staff while he was in general population to discuss his medical needs.  He explained that this could result in a violation of his privacy, and that these conversations

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 8 of 24

rarely made it back to a physician assistant for the action he wanted. He instructed him to contact the first security officer he saw (or have another person contact an officer) should he have an emergency.  Security would initiate the proper emergency response.  If he felt that he needed an appointment with a specialist, some unique medical care, a special procedure, or had some other medical need, that it was his sole responsibility to provide that request in writing on a cop-out.  After staff received the cop-out, an investigation would begin into what needed to be done.  In the end Davis stated that he understood what was required of him and stated that he would comply.  *Id*., pp. 6-7.

      C.    The Response by Superintendent Hyden.

Hyden was the Acting Superintendent of PCC when Davis filed his grievance.  Exhibit B, p. 2.  Although medical staff worked at PCC, they were actually supervised by the medical unit at DOC Central Office in Anchorage.  *Id.*, p. 3.  Hyden had no medical training. When Hyden reviewed a medical grievance that had been investigated by medical staff, he depended "heavily" on what medical staff told him.  *Id.*, p. 4.  Hyden reviewed PA Hale's investigation response and assumed that Davis would appeal the grievance when he wrote his response.  *Id*., p. 5.

> The above investigation does not address the prisoner's grievance.  Perhaps prisoner should be transferred to a facility with full time medical staff to accommodate "life threatening" condition.

Exhibit A, p. 2.

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 9 of 24

Hyden invited the Medical Advisory Committee "MAC" to determine on appeal if they felt that Davis needed to be transferred to a facility such as the Anchorage Jail where there is a separate medical unit for inmates. *Id*., p. 6. He was responding to Davis's claim that his condition was "life-threatening." *Id*., pp. 5-6. He referred the issue to the committee because they are the medical professionals. *Id.*, p. 6. In his words, "I'm not (a medical person.) It's their call." The decision to transfer an inmate for medical reasons would have to be made by the medical staff. *Id.*

Once Hyden responded to the grievance, he was done with it. He relied upon the medical staff to do their job.

> …[T]hey're the medical professionals. I'm not. I have to trust them. If they tell me everything is okay, inmate's needs are being met, they are the medical professionals. I'm not. I can't second guess them.

*Id.*, p. 6.

> …
>
> Well, I would say my medical knowledge, I have no formal training in medical. I – I can't say that I would understand anything about medical. I haven't been trained in any medical other than CPR and whatever. But vaguely, yeah, you'd have to assume if someone has something placed in their chest, yeah, it's serious.
>
> But also, I know people that have implants and they're out working jobs and stuff and everything is hunkey dorey. And they're doing whatever. So once again, I'm not a medical staff. I don't know what limitations a defibrillator could have. There's—because I know a couple people with these kind of things and they're living pretty much normal lives. So I can't second guess that, no.

*Id.*, p. 7.

    D.   <u>Davis's Appeal.</u>

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 10 of 24

The inmate appealed the superintendent's response.  He wrote:

On 5/12/02 I filed a Grievance against the Palmer Medium medical Staff for non-compliance and for not providing the proper medical attention that is needed.  Now the Palmer Medium Facility and its Staff fail to comply with their own policies and procedures, Administrative Codes also known as the AAC's, & P&P's.  Violation of the CLEARY final Settlement, Agreement and Order No. 3An-81-5274 2. Health Care 4. Appendix E page 4.  Health Examinations 2-4289, 2-5273 and standards 2-5344 in the P&P's.  The Department of Corrections has ten working days to review the decision, seek review of the final decision and if an inmate is dissatisfied with the decision he may proceed with the necessary legal process and no Retaliatory action may be taken against any inmate for filing or pursuit of a grievance.  –68, 7, 8, of the CLEARY Final Settlement Agreement and Order.  This Administration at Palmer Medium Facility failed to comply with the Settlement, Agreement and Order.
In BATTLE vs. United States of America, Plaintiff-Intervenor, Civ.A.No. 72-95 Lack of Medical Staff, Medical Staffing Requirements, full time Registered Nurse, Licensed Practical Nurse, Correctional Medical Specialist.  This is a U.S. District Court decision and which also applys to all the Correctional Facilities within the State of Alaska.

Exhibit A, p. 3.

    E.    The Appeal Response.

        Henry was the Health Care Administrator at DOC when Davis filed his

appeal.  Exhibit C, p. 3.   He is not a medical doctor, and was not supervisor of health

care at DOC's institutions.  *Id*., pp. 2, 4.   DOC had a medical director who reported to

Henry.  *Id*., p. 4.  It was the medical director who was responsible for the medical staff in

each facility and had final oversight authority over the medical staff.  *Id*., p. 5.

        Henry had no involvement in making medical decisions at DOC.  *Id*., p. 7.

He did not have the training or the ability from a medical standpoint to make medical

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 11 of 24

decisions.  It was not part of his responsibility.  *Id.*, p. 6.  If a question arose about an inmate's care, usually it was referred to one of the medical consultants and ultimately to MAC.  MAC was comprised of medical persons, including two contract physicians and physician assistants, and nurses who met once weekly to go over cases that were not resolved at the local level.  *Id.,* p. 6.

It was MAC who reviewed Davis's appeal and determined what response to provide him.   In terms of the medical aspect of the decision-making, Henry had no "say so.  *Id.*  Henry acted only as secretary to MAC when he wrote the response to Davis's appeal.  *Id.*

I have reviewed your original grievance, your appeal, all your written requests for medical care, and the accompanying medical documents.  Your grievance is for the facility where you are housed not having adequate medical staff to meet your medical needs.

FINDINGS:

Your grievance states that you have a heart condition and serious medical condition that the officers are not trained to recognize and properly manage during the hours that the medical department is not open.

All Department of Corrections facilities have a medical provider that is on call for the facility.  The officers are trained in basic life support, automated defibrillators, first aid, and are trained to call the on call provider with non-emergent medical issues that occur during the hours that the medical department is not staffed, or to call Emergency Medical Services if the situation is an emergency.  The medical provider for your facility may also medically move you to another DOC facility if your medical condition warrants such a move.  At the present time there is no indication that the medical and security staff at Palmer Correctional Center can not meet your essential health care needs per DOC Policy #807.02.

Grievance and appeal denied.

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 12 of 24

Exhibit A, p. 4.

### III.    THE EXPERT MEDICAL OPINION OF DAVIS'S TREATMENT.

Dr. Henry A. Luban is the Health Services Administrator and Medical Director for the Alaska Department of Corrections.  He is a physician licensed to practice medicine in Alaska and in New York.  He is certified by the American Board of Internal Medicine.  He has reviewed Davis's medical records to determine whether his medical treatment at PCC was appropriate.  *See* Affidavit of Henry A. Luban, M.D.

It is Dr. Luban's opinion:

a.    The plaintiff received appropriate care during his incarceration at Palmer Correctional Facility consistent with correctional and community medicine standards.  His blood coagulation was monitored monthly, which was certainly an acceptable frequency given good control.  Additionally, his blood pressure was monitored regularly and was generally at an acceptable level.
b.  There were no objectively demonstrable untoward medical outcomes or events because of failure to provide medically necessary care.

Exhibit D.[2]

### STANDARDS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides in relevant part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

---

[2] Dr. Luban's affidavit is filed at docket 59 & 60.

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 13 of 24

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In deciding a motion for summary judgment the court views the evidence and the inferences therefrom in the light most favorable to the non-moving party. *Levin v. Knight*, 780 F.2d 786, 787 (9th Cir. 1986). Three United States Supreme Court cases have clarified what a non-moving party must do to withstand a summary judgment motion. As explained by the Ninth Circuit in *California Architectural Building Products, Inc. v Franciscan Ceramics, Inc.*, 818 F. 2d 1466, 1468 (9th Cir. 1987):

> First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, [477 U.S. 317], 106 S. Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, [477 U.S. 242], 105 S. Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S.Ct. 1348, 1356 (1986).

## ARGUMENT

## I.    HYDEN AND HENRY ARE ENTITLED TO SUMMARY JUDGMENT

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 14 of 24

A.    **THE FOURTEENTH AMENDMENT DOES NOT PROVIDE A RIGHT TO MEDICAL SERVICES FOR SENTENCED INMATES.**

In the amended complaint, the plaintiff claims that defendants violated his rights to adequate medical care under the Fourteenth Amendment. See docket 38, p. 6. Sentenced prisoners such as Davis are afforded the right to essential medical care under the Eighth Amendment. *See* discussion, *infra*. Defendants are entitled to an order of summary judgment on this basis alone.

B.    **NEITHER HYDEN NOR HENRY WAS WILLFULLY INDIFFERENT TO DAVIS'S MEDICAL CONDITION**.

The Eighth Amendment to the U.S. Constitution provides that cruel and unusual punishment shall not be inflicted.

> Excessive bail shall not be required, nor excessive fines imposed, or cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment symbolizes "broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *See Estelle v. Gamble*, 429 U.S. 97, 102 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). The United States Supreme Court, in applying these concepts and standards to the issue of medical care for prison inmates has further indicated that punishments which "involve the unnecessary and wanton infliction of pain" are incompatible with the concepts and standards set forth above. *Id*., at 429 U.S., at 102-03, 97 S.Ct., at 290.

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 15 of 24

> These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . .   We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," . . . proscribed by the Eighth Amendment.

*Id.*, at 429 U.S., at 103-04, 97 S.Ct., at 290-91 (internal citation omitted).

It is well settled that it is unconstitutional to provide inadequate medical treatment amounting to "deliberate indifference" to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 104-106, 97 S.Ct. 285, 290-291, 50 L.Ed.2d 251 (1976)(citations omitted).

> . . . This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Id.  See also*, *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992)(citations omitted).

It has also been noted that the "deliberate indifference" standard for purposes of Eighth Amendment analysis also exists where "knowledge of the need for medical care . . . or 'necessary medical treatment [i]s . . . delayed for non-medical reasons[.]'"   (Emphasis added.)   *citing Monmouth County Correctional Institution Inmates v. Lanzaro*, 834 F.2d 326, 346 (3rd Cir. 1987) (ellipsis in the original).

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 16 of 24

On the other hand, the Supreme Court in *Estelle, supra*, also stated that "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain'" or to be "'repugnant to the conscience of mankind.'" 429 U.S. at 105-106, 97 S.Ct. at 292.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. . . .

*Id*.

The United States Supreme Court has ruled that there is a subjective component to the "deliberative indifference" standard enunciated in *Estelle*; i.e., there must be an inquiry into the state of mind of the official(s) accused of inflicting cruel and unusual punishment. *Farmer v. Brennan*, 114 S.Ct. 1970 (1994). And although the constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the doctor or treatment of his choice. *See United States v. Rovetuso*, 768 F.2d 809, 825 (7th Cir. 1985). A difference in medical opinion does not state a claim for deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

In *Johnson v. Doughty*, 433 F.3d 1001 (7th Cir. 2006), the Seventh Circuit Court of Appeals affirmed the judgment entered in favor of the defendant medical and

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 17 of 24

non-medical prison officials.  Johnson, a former inmate, claimed that the non-medical defendants were deliberately indifferent to his serious medical needs because they denied his grievance and grievance appeals regarding his treatment.  Defendant Curll was a grievance counselor at the prison who had recommended that Johnson's grievance be denied.  When he received a grievance complaining about Johnson's pain and treatment, Curll researched the complaint and was told that surgery was not required.  Curll learned that Johnson was told to return to medical if his condition changed.  This information was the basis for his recommendation to the warden to deny the grievance.

Romero was the warden who denied Johnson's grievance.  Romero concurred in Curll's recommendation because the inmate had been evaluated by a doctor and was receiving medical care for the grieved condition.  Like Curll, Romero was aware of Johnson's complaints and knew that medical care was available to him.  The Seventh Circuit concluded that neither Curll nor Romero acted with deliberate indifference:

> Curll's conduct does not demonstrate a sufficiently culpable state of mind.  The necessity of surgery was not obvious, *see Higgins*, 178 F.3d at 511, and Curll, not a medical professional, did not know whether Johnson's condition required surgery. …Nevertheless, Curll did not disregard Johnson's complaints.  He investigated the situation, made sure that the medical staff was monitoring and addressing the problem, and reasonably deferred to the medical professions' opinions.  *See Greeno*, 414 F.3d at 656 ("Perhaps it would be a different matter if [the non-medical prison official] had ignored [the plaintiff's] complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address [the plaintiff's] concerns." (citing *Hernandez v. Keane*, 341 F.3d 137, 148 (2d Cir. 2003); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993), *see*

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 18 of 24

*also Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004); [FN9] *Bond v. Aguinaldo*, 228 F.Supp.2d 918, 920 (N.D.Ill. 2002)("Except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals.") ….

> FN9.  The Third Circuit's analysis on this point bears repeating here: If a prisoner is under the care of medical experts …, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison.  Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor….Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.
> *Spruill*, 372 F.3d at 236; *see also Greeno*, 414 F.3d at 656.

Romero, the warden, is likewise entitled to summary judgment.  Romero, who is also not a medical professional, received Curll's report along with Johnson's grievance.  Romero concurred in Curll's recommendation because Johnson had been evaluated by a doctor and was receiving medical care for the grieved condition.  Like Curll, Romero did not know whether John required surgery, but he was aware of Johnson's complaints of pain and made sure that medical care was available to Johnson so that qualified medical professionals could determine if Johnson did need surgery.

*Johnson v. Doughty*, at 1010-1011.

In the present case there is no evidence that Hyden was deliberately indifferent to plaintiff's medical condition.  Hyden is not medically trained.  He

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al*. Case A02-214 CV (JKS)
Page 19 of 24

reasonably relied upon PA Hale's investigation and conclusion that Davis was receiving appropriate medical care at PCC.

PA Hale is the Institutional Health Care Officer at PCC. He has worked for DOC as a Physician Assistant for over twenty years. There are two physician assistants at PCC, who work on a one-week on, one-week off shift. PCC also had registered nurses on its staff. In addition, a physician saw inmates at PCC once a week.

Even though Hyden relied upon Hale's opinion and denied the grievance, he invited MAC to consider whether Davis should be medically transferred to a facility with full-time medical staff. His suggestion was prompted by Davis's allegation that his condition was life-threatening. Suggesting his transfer was not an indifferent act.

There is likewise no evidence that Henry was deliberately indifferent to plaintiff's medical care. When he denied his appeal, Henry reasonably relied upon the opinion of MAC. Henry is not a medical professional; he is an administrator. MAC is comprised of physicians, physician assistants and nurses. They reviewed Davis's grievance, appeal, cop-outs and medical records. It was their opinion that PCC provided Davis with essential health care. There was no indication that he needed to be transferred to a facility with full-time care.

    **C.**    **PLAINTIFF HAS NO EXPERT TESTIMONY TO SUPPORT HIS CLAIM OF INADEQUATE MEDICAL CARE.**

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 20 of 24

In medical malpractice cases, the plaintiff must offer expert testimony that establishes the standard of care, and the breach thereof, in order to proceed to court. *See Johnson & Higgins of Alaska Inc. v. Blomfield*, 907 P.2d 1371, 1374 (Alaska 1995)("expert testimony is generally required in medical malpractice cases"); *Clary Insurance Agency v. Doyle*, 620 P.2d 194, 200 (Alaska 1980)("In medical malpractice actions…the jury ordinarily may find a breach of professional duty only on the basis of expert testimony"); *Kendall*, 692 P.2d at 955 (same); *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 354 (Alaska 1988)("given the complex medical issues involved in malpractice cases, the goal of an expert panel review statute would be completely thwarted without the specialized expertise of medically-trained panel members").

Expert testimony is also required in civil rights cases where the plaintiff is claiming that defendants were willfully indifferent to his medical care and that his medical care was inadequate.  The jury must be provided with expert testimony to establish the standard of care required of the medical staff and to determine if its treatment of plaintiff was appropriate.  *See* Exhibit D, *Esslinger v. Worrall et al.*, Case A01-0237 cv (JKS), Order at docket 120.

In the present case the plaintiff apparently has no expert witness to establish the appropriate medical standard of care and breach of the applicable standard.   Without expert testimony, summary judgment should be entered in favor of Hyden and Henry. They cannot be held liable for their alleged willful indifference to plaintiff's inadequate

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 21 of 24

medical care when plaintiff cannot show that his medical treatment did not meet the community and correctional standards.

## II.    PLAINTIFF CANNOT MEET THE THRESHOLD FOR AN AWARD OF PUNITIVE DAMAGES

Punitive damages become a discretionary matter for the jury only if the plaintiff makes an adequate threshold showing. *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983),  A plaintiff reaches the threshold showing for punitive damages only when the defendant's outrageous conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  *Smith v. Wade*, at 46-47.  An award of punitive damages is the result of the jury's discretionary moral judgment. *Id.,* at 52.

In the present case there is no evidence that either Hyden or Henry acted outrageously when they denied plaintiff's grievance and grievance appeal.  Both are non-medical people who relied upon the opinions of DOC medical staff.  Neither Hyden nor Henry was motivated by evil intent, nor were they recklessly or callously indifferent to Davis.            .

## III.   DAVIS HAS NO STANDING TO SEEK CHANGES TO THE MEDICAL STAFF AT PCC.

In his amended complaint Davis seeks adequate medical staffing at Palmer Correctional Center.  Since Davis is no longer incarcerated, he has no standing in federal court to pursue these issues.   The proposals are also considered moot because of

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 22 of 24

his release.  *See McQuillion v.Schwarzenegger,* 369 F.3d 1091, 1095 (9th Cir. 2004).

## **CONCLUSION**

There is no evidence of deliberate indifference in this case.  Both Hyden and Henry were non-medical staff.  Both relied upon the medical staff to provide the inmate with adequate medical care.  Both reasonably relied upon the medical staff when they denied plaintiff's grievance and appeal.

Although plaintiff claims that Hyden and Henry were willfully indifferent to his alleged inadequate medical care at PCC, without an expert plaintiff cannot show the standard of care for his condition, nor can he show that the standard was not met.  His claims against Hyden and Henry therefore fail because he cannot prove that his medical care was inadequate.

Plaintiff  cannot meet the threshold for an award of punitive damages.  Neither Hyden nor Henry acted with evil intent, nor did either act with reckless or callous indifference.

Finally, Davis is no longer an inmate.  He lacks standing to pursue an order for changes in the medical staff at PCC.  His injunctive claims are moot.

The defendants respectfully request that the court enter its order of summary judgment in their favor.

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 23 of 24

Dated this 18th day of May, 2006, at Juneau, Alaska.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL


By: s/Marilyn J. Kamm, ABA 7911105
State of Alaska
Department of Law
Criminal Division Central Office
PO Box 110300
Juneau, AK  99811
Phone: (907) 465-3428
Fax: (907) 465-4043
Marilyn_Kamm@law.state.ak.us

I certify that on the 18th day of
May, 2006, a copy of the foregoing
document was served electronically on:

Thomas Matthews
Matthews & Zahare
431 W. 7th Ave, Suite 207
Anchorage, AK  99501

By: s/Marilyn J. Kamm, ABA 7911105
State of Alaska
Department of Law
Criminal Division Central Office
PO Box 110300
Juneau, AK  99811
Phone: (907) 465-3428
Fax: (907) 465-4043
Marilyn_Kamm@law.state.ak.us

Motion and Memorandum in Support of Motion for Summary Judgment
*Davis v. Hyden et al.* Case A02-214 CV (JKS)
Page 24 of 24