Thomas A. Matthews, ABA No. 8511179
Matthews & Zahare, P.C.
431 West 7th Ave., Suite 207
Anchorage, Alaska 99501
Phone: (907) 276-1516
Facsimile: (907) 276-8955
tom.matthews@matthewszahare.com

Counsel for Plaintiff Davis

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHARLIE J. DAVIS, JR., ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> ZELMER HYDEN, et al., ) <br> ) <br> Defendants. ) <br> _____) | Case No. A02-0214 CV (JKS) |

**MEMORANDUM IN SUPPORT OF MOTION TO REOPEN OR EXTEND
DISCOVERY AND TO COMPEL PRODUCTION OF DOCUMENTS
AND ATTENDANCE OF WITNESS AT DEPOSITION**

**I.   INTRODUCTION**

The parties have, at long last, recently completed the depositions of Plaintiff Charlie Davis, and Defendants Zelmer Hyden and Mel Henry. In addition, Plaintiff took the deposition of Henry Luban, M.D., the current medical director for the Department of Corrections. During the course of these depositions, Plaintiff's counsel learned for the first time of the identity and existence of significant and perhaps critical documents which have not been produced. In addition, counsel learned that a previously identified witness has substantially greater significance to the case than had previously been

known or understood. Consequently, Plaintiff moves this Court for an Order extending or reopening discovery to require Defendants to produce recently discovered documents, and to permit the deposition of Roger Hale.

## II.     PROCEDURAL POSTURE

This case was originally filed by Mr. Davis *pro se* on August 16, 2002. On May 27, 2003, the Court issued an order requesting appointment of counsel for Mr. Davis from Alaska Pro Bono. On September 9, 2003, the undersigned counsel entered the case as pro bono counsel. The briefing of Defendants' first motion to dismiss followed. An Amended Complaint was lodged with the Court on October 24, 2003. On March 25, 2004, the Court formerly denied Defendants' first Motion to Dismiss. Thereafter, on April 15, 2004, Defendants first answered the Amended Complaint. This Court entered its initial Scheduling and Planning Order on September 8, 2004. For the next year, the case admittedly languished. The parties engaged in written discovery, but no depositions were taken.

On November 5, 2004, Plaintiff submitted its First Request For Production to Defendant.[1] Defendants partially responded to Plaintiff's First Discovery Requests on January 14, 2005.[2] On April 12, 2005, Plaintiff submitted his Second Request for

---

[1] Plaintiff had previously submitted an informal request for production of records to counsel for defendants on October 27, 2003. *See* Affidavit of Thomas A. Matthews, ¶ 4. (Exh. 1) Letter to Bodick (Exh. 2).

[2] *See* Exhibit 3. (Defendant Discovery Responses 1/14/05). Defendants initially responded with draft responses to most of the discovery requests on January 14, 2005. A draft response to Interrogatory No. 4 was provided on May 16, 2005.

Motion to Reopen or Extend Discovery
*Davis v. Hyden, et. al.*, Case No.: A02-0214 CV (JKS)
TAM:jlw\103-2\MemoToExtDiscovery.doc                                                                Page 2 of  11

Discovery to Defendants.[3]  The second requests were overlooked, and responses (in reality non-responses) were provided just recently on May 8, 2006.[4]

Defendants filed a second Motion to Dismiss on August 29, 2005.  The briefing of the motion took approximately two months.  The Court entered its recommendations to deny the Motion to Dismiss on November 21, 2005.  The Court's formal Order denying Defendant's Motion to Dismiss was issued on January 26, 2006.[5]

Plaintiff first began asking for an opportunity to depose the Defendants on March 30, 2005.[6]  Because of the previous Motion to Dismiss, counsel for the parties put off depositions (by agreement) until after the Court entered its final order.  Due to scheduling conflicts and other factors, the depositions were not finally taken until late April, early May, 2006.  It is against this backdrop in procedural posture that Plaintiff's request for additional discovery should be considered.

### III.   SUMMARY OF FACTS

The facts of this case are set out in some detail in earlier briefing, and in the Magistrate's Recommendation regarding Motion to Dismiss.[7]  Accordingly, a brief recitation is all that is provided here to put the discovery in context.

---

Verified responses were not provided until Defendants depositions were taken on April 28 and 29, 2006.  See Exhibit 4.
[3] See Exhibit 5. (2nd Discovery Requests 4/12/05).
[4] See Exhibit 6 (Discovery Responses, dated 5/8/06).
[5] Docket No. 69.
[6] See Exhibit 1, Affidavit of Thomas A. Matthews; Exhibit 7 (E-mail to M. Kamm 3/30/05).
[7] Docket No. 62.

Motion to Reopen or Extend Discovery
*Davis v. Hyden, et. al.*, Case No.:  A02-0214 CV (JKS)
TAM:jlw\103-2\MemoToExtDiscovery.doc                                                              Page 3 of  11

As the Court is aware, Plaintiff Charlie Davis was incarcerated at the Palmer Correctional Center in 2002. In January 2002, Davis suffered a serious heart attack. Nine years earlier, he had undergone heart by-pass surgery. Because of his heart condition, Davis had an electronic defibrillator implanted in his chest after his heart attack in January 2002. In this case, Davis has alleged that Defendants violated his constitutional rights because they were deliberately indifferent to his serious medical needs while he was incarcerated.

This Court, and indeed Defendants themselves, have recognized that Davis entered custody of the Palmer Correctional Center with severe medical problems, and a need for significant medical attention. He was 70 years old at the time, with an implanted defibrillator and seven different prescription medications. He was clearly different than an average prisoner in the regular prison population.

### IV. THE PROPOSED DISCOVERY

#### A. Daily Meeting Minutes

At his deposition, Superintendent Hyden was asked about Mr. Davis' status, and in particular about his unique medical needs.

Defendant Hyden was the Superintendent at Palmer Correctional Center during Mr. Davis' incarceration.[8] During that time, Mr. Hyden would have a daily staff meeting

---

[8] *See* Exhibit 8 (Hyden Depo. at 16).

Motion to Reopen or Extend Discovery
*Davis v. Hyden, et. al.*, Case No.: A02-0214 CV (JKS)
TAM:jlw\103-2\MemoToExtDiscovery.doc
of 11                                                                                                      Page 4

which would typically include a representative of medical staff.[9]  Records were kept of the meeting in the form of formal minutes.[10]

If there were significant issues involving an inmate, such as Mr. Davis with a serious medical condition, medical staff would make Mr. Hyden and the other staff aware of the problem with the daily briefing.[11]  Most importantly, Superintendent Hyden testified that Mr. Davis' significant and unique medical condition would most likely have been discussed in his daily staff meetings.[12]  Under the circumstances, the potential relevance of the daily meeting minutes to Plaintiff's claim against Superintendent Hyden for deliberate indifference to his medical needs is obvious.

### B. Medical Advisory Committee Meeting Minutes

Like Mr. Hyden, Defendant Mel Henry testified to the existence of significant documents which were not previously disclosed.  According to Dr. Henry, he was the Health Care Administrator during the time Mr. Davis was incarcerated at Palmer Correctional Center.  He had overall administrative responsibility for the physical and mental health of prisoners incarcerated at Palmer Correctional Center, including Mr. Davis.[13]

---

[9] *See* Exhibit 8 (Hyden Depo. at 16).
[10] *Id.*
[11] *See* Exhibit 8 (Hyden Depo. at 15).
[12] *See* Exhibit 8 (Hyden Depo at 71).
[13] *See* Exhibit 9 (Henry Depo at 12, 16).

Motion to Reopen or Extend Discovery
*Davis v. Hyden, et. al.*, Case No.: A02-0214 CV (JKS)
TAM:jlw\103-2\MemoToExtDiscovery.doc                                                                          Page 5
of  11

As the Court is aware, Dr. Henry signed the final rejection of Mr. Davis' grievance appeal in this matter.[14]  According to Dr. Henry, there would have been a medical "record of decision" in the form of minutes or other documentation which supported the denial of Mr. Davis' grievance appeal.[15]  Davis' grievance had to go through a medical advisory committee review process after he appealed it in June, 2002.[16]  By all appearances, there is simply a black hole of indecision between Davis' grievance appeal dated June 27, and Dr. Henry's denial of September 5, 2002.[17]  As the court will recall, Superintendent Hyden initially recommended (in response to Davis' grievance) that consideration be given to transferring Davis to a different facility which could better meet his medical needs.[18]  According to Mr. Hyden, a final decision on his recommendation would come from medical staff under Dr. Henry's supervision.[19]  According to Dr. Henry, his medical staff must have concluded it was unnecessary to transfer Mr. Davis, or he would not have signed off on the final denial letter from Mr. Davis' appeal.[20]

In effect, Davis is being whipsawed.  There is documentation addressing Davis' medical status which Defendants do not wish to produce.  Its relevance is patently obvious.  If the Medical Advisory Committee considered Davis' medical needs, and

---

[14] *See* Exhibit 10 (Grievance Appeal Package (Henry Depo. Exh. 1).
[15] *See* Exhibit 10 (Grievance "Package" (Henry Depo Exh. 1).
[16] *See* Exhibit 9 (Henry Depo at 26-27); Exhibit 10 (Henry Depo. of 26-27).
[17] *See* Exhibit 9 (Henry Depo at 26).
[18] *See* Exhibit 10 (Grievance Package).
[19] *See* Exhibit 9 (Henry Depo at 21-22).

Motion to Reopen or Extend Discovery
*Davis v. Hyden, et. al.*, Case No.:  A02-0214 CV (JKS)
TAM:jlw\103-2\MemoToExtDiscovery.doc                                                                                                    Page 6 of  11

concluded they were being adequately addressed at Palmer Correctional Center, then Davis should be entitled to see the basis for that decision. According to Dr. Henry, the documentation exists, and should have been maintained as a matter of course.

### C. Deposition of Roger Hale

Mr. Hale is a physician's assistant at Palmer Correctional Center. He was identified on both Plaintiff and Defendant's witness list. He is also identified as a member of the medical staff at Palmer Correction Center in the one organizational chart that was produced by Defendants.[21] What was unknown, or at least unappreciated until recently, was the significance of Mr. Hale's responsibility for Mr. Davis' medical treatment.

In his first discovery requests, Davis asked each Defendant to identify the person most knowledgeable about his medical treatment at Palmer Correctional Center.[22] Defendants' discovery response identified Dr. Henry Luban, the current medical director of Department of Corrections.[23] Neither Defendant identified Mr. Hale.[24] However, in depositions, both witnesses testified that Mr. Hale would most likely have been the person with day-to-day responsibility for Mr. Davis' medical treatment, and with the most

---

[20] *See* Exhibit 9 (Henry Depo at 28-29).
[21] *See* Exhibit 11 (Org Chart, Hyden Depo. Exhibit 1).
[22] *See* Exhibit 4 (Discovery Responses).
[23] *Id.*
[24] *Id.*

Motion to Reopen or Extend Discovery
*Davis v. Hyden, et. al.*, Case No.: A02-0214 CV (JKS)
TAM:jlw\103-2\MemoToExtDiscovery.doc                                                    Page 7 of  11

knowledge of Davis his condition.[25] Dr. Luban first came to Alaska in 2004, two years after Mr. Davis' release.[26] Dr. Luban is the current chief medical officer for the Department of Corrections, but does not participate in the clinic care of inmates.[27] He may review files (after the fact) on inmates such as Davis on case-by-case basis. However, he has no personal knowledge of the treatment, and was not involved clinically at all. Instead, the day-to-day medical care for inmates for Palmer is provided by nurses and PAs.[28] As Dr. Luban testified:

> A. [O]ne of the PAs is called the Institutional Health Care Officer. And he provides clinical oversight and also direct clinical care to the staff and patient population, inmate population. So he is the supervising medical person.
>
> Q. And who is that person currently?
>
> A. Roger Hale.[29]

By contrast, Dr. Luban, the designated spokesperson regarding Mr. Davis' treatment at Palmer Correctional Center, had no first-hand knowledge of his condition at all.[30]

Under the circumstances, it is only reasonable to allow Plaintiff an opportunity to depose Mr. Hale now that the significance of his potential testimony has been revealed.

---

[25] *See* Exhibit 8 (Hyden Depo. at 15, 29-30, 49-50, 60, 71); Exhibit 9 (Henry Depo at 13-14, 30-32, 33); Exhibit 12 (Luban Depo at 11-12, 14-16, 24-27).
[26] *See* Exhibit 12 (Luban Depo. at 6).
[27] *See* Exhibit 12 (Luban Depo. at 6-9)
[28] *See* Exhibit 12(Luban Depo. at 11).
[29] *See* Exhibit 12 (Luban Depo. at 11).
[30] *See* Exhibit 12 (Depo. of Henry Luban, M.D., at 15-16).

Motion to Reopen or Extend Discovery
*Davis v. Hyden, et. al.*, Case No.: A02-0214 CV (JKS)
TAM:jlw\103-2\MemoToExtDiscovery.doc        Page 8 of 11

### V.    DEFENDANTS' POSITION ON THE REQUESTED DISCOVERY

Following the conclusion of the recent depositions, Plaintiff's counsel approached Defendant's counsel in an effort to obtain the requested discovery voluntarily.[31]  The request was rebuffed.  Defendants make no effort to suggest the discovery is irrelevant, or that it would not aid the parties or the Court in advancing the litigation.  Instead, the Defendants simply suggest the request for discovery is untimely.[32]

It is true that no formal stipulation to extend discovery was ever submitted by the parties.  However, the pattern of cooperation between the parties suggests that discovery would continue after Defendants' motion was decided.[33]  Indeed, the correspondence suggests otherwise.[34]  Counsel never suggested that follow-up discovery would be rejected.  It would be manifestly unfair for Defendants to be able to hide the existence of significant documentation until after discovery technically closed, and then claim there was no need to produce the documents simply because the request was "untimely."

Similarly, Mr. Hale's deposition should be allowed.  The significance of his testimony to this case is now apparent.  While Defendants are correct that Mr. Hale's name and status as a PA at Palmer Correctional Center were previously known,[35]

---

[31] *See* Exhibit 13 (Matthews letter, dated 5/12/06); *see also* Exhibit 14 (Discovery Requests); and Exhibit 15 (Deposition Notice).
[32] *See* Exhibit 16 (M. Kamm Letter, dated 5/15/06).
[33] *See* Exhibits 17 (E-mail chain) and 18 (M. Kamm letter, dated 5/27/05).
[34] *See* Exhibit 18 (M. Kamm letter, dated 5/27/05).
[35] *See* Exhibit 11 (Org. chart).

Motion to Reopen or Extend Discovery
*Davis v. Hyden, et. al.*, Case No.:  A02-0214 CV (JKS)
TAM:jlw\103-2\MemoToExtDiscovery.doc                                                                        Page 9 of  11

Plaintiff had no reason to know that Mr. Hale was in fact the senior most medical officer at Palmer Correctional Center, with the greatest knowledge of Mr. Davis' treatment. In fact, without the aide of a high-powered magnifying glass, Defendants' organizational chart is impossible to read.[36] Without Defendants' deposition testimony, Plaintiff would never have known of Mr. Hale's true significance. Under the circumstances, it would be manifestly unjust to deny Plaintiff the opportunity to take this deposition.

## VI.   CONCLUSION

Plaintiff seeks an opportunity to conduct additional limited discovery in this matter. Defendants have documents in their possession which are clearly relevant, and may contain admissible evidence. Each of the Defendants testified to the existence of the documents, and in fact was unable to testify whatsoever about Plaintiff's care and treatment at Palmer Correctional Center without referring to the documents. Under the circumstances, Defendants should be ordered to respond and produce the requested documents.

Similarly, Plaintiff should be allowed to take the deposition of Roger Hale. Mr. Hale appears to be the single person most knowledgeable about Mr. Davis' medical treatment at Palmer Correctional Center. The significance of Mr. Hale's potential testimony was previously unknown and was not revealed until the depositions of the

---

[36] *Id.*

Motion to Reopen or Extend Discovery
*Davis v. Hyden, et. al.*, Case No.: A02-0214 CV (JKS)
TAM:jlw\103-2\MemoToExtDiscovery.doc                                                                              Page 10 of  11

Defendants were completed very recently. Under the circumstances, Plaintiff requests the Court extend or reopen discovery to allow the additional deposition.

DATED this 19th day of May 2006, at Anchorage, Alaska.

        MATTHEWS & ZAHARE, P.C.
        Counsel for Plaintiff Davis

By: __s/ Thomas A. Matthews_____
   Thomas A. Matthews, ABA No. 8511179
   431 West 7th Ave., Suite 207
   Anchorage, Alaska 99501
   Phone: (907) 276-1516
   Facsimile: (907) 276-8955
   tom.matthews@matthewszahare.com

CERTIFICATE OF SERVICE

I certify that on 19th day of May 2006
a copy of the foregoing document was
served by electronic mailing to:

Marilyn J. Kamm, Esq.
Assistant Attorney General
State of Alaska, Dept. of Law
Criminal Division Central Office
P.O. Box 110300
Juneau, AK 99811


s/Thomas A. Matthews _____

Motion to Reopen or Extend Discovery
*Davis v. Hyden, et. al.*, Case No.: A02-0214 CV (JKS)
TAM:jlw\103-2\MemoToExtDiscovery.doc    Page 11 of 11