IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHARLIE J. DAVIS, JR.,<br>    Plaintiff,<br> vs.<br>ZELMER HYDEN, et al.,<br>    Defendants. | Case No. 3:02-cv-00214-JKS<br><br>O R D E R |

  Charles Davis, Jr. sues Zelmer Hyden and others alleging conscious indifference to his medical needs while incarcerated at a State of Alaska prison facility. He bases his claim upon the Eighth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment and 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1343.

  Initially, Davis appeared pro se and included multiple theories in his pleadings. United States Magistrate Judge John D. Roberts, to whom this matter was initially referred, collapsed all of those claims into a conscious indifference claim pursuant to *Estelle v. Gamble*, 429 U.S. 97 (1976). Davis does not appear to contend that he has other claims; the Court will therefore proceed on the basis that an *Estelle* claim is the only claim Davis has.

  The Defendants' motion to dismiss was denied based upon 1) exhaustion of administrative remedies and 2) failure to allege "physical injury." Docket No. 69. This Court hesitates to grant motions to dismiss in prisoner cases where the motion depends upon facts—particularly where the prisoner is pro se. While Davis is represented by counsel in this case, the Court viewed the motion to dismiss with the same reluctance.

Nevertheless, the Court remains convinced that a conscious indifference claim based upon a failure to address the serious medical needs of prisoners is a form of aggravated medical malpractice, and that in order to avoid summary judgment the plaintiff's admissible evidence must, as a preliminary matter, satisfy each of the elements of a medical malpractice claim (professional duty; breach of duty; actual and proximate cause; and, damages) and, in addition, show that the breach of duty was not merely negligent but amounted to conscious indifference—a form of recklessness.  Recklessness is measured not only by the likelihood of foreseeable damage, but also its foreseeable magnitude.  Consequently, a plaintiff seeking to prove conscious indifference must either (1) point to a breach of the standard of medical care that would be obvious to a lay juror, *i.e.,* amputating the wrong leg or leaving a medical tool inside the patient after an operation, or (2) produce expert medical testimony establishing the standard of care and showing how the prison's response to the prisoner's medical needs fell below that standard.

It is not enough that one physician might prescribe a particular regimen since reasonable physicians may differ in their diagnosis, prognosis, and treatment of almost any illness and injury.  A plaintiff's expert must be prepared to testify that the actual treatment given fell below the standard of care, taking into account acceptable variations within that standard.  Of course, any expert testimony must pass muster under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) and *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).  Only if the plaintiff crosses this initial threshold would the inquiry focus on the extent of any breach of duty and seek to determine whether such breach was merely negligent or met the heightened standard of conscious indifference.  In other words, there must be evidence from which a lay juror could infer breach of the duty of professional care before the issue of the extent of that breach arises.

Thus, if a prisoner testifies that he is refused specific medical treatment by a guard who has specifically pronounced a refusal to treat prisoner's of a certain race, the testimony would be relevant to conscious indifference.  However, such testimony would have to be buttressed by expert testimony that the plaintiff actually required the requested medical treatment.

It is likely that a plaintiff's expert medical witness would begin her testimony with the plaintiff's history of his complaints and the plaintiff's subjective evaluation of the prison's response

ORDER

to those complaints. But to satisfy the threshold of proof, the expert must review the prisoner's entire relevant medical history, including any records of his treatment within the prison, and the response, if any, provided by the prison to the prisoner's complaints. It is not enough that an expert state in conclusory terms that there was a breach of the standard of professional care: the testimony must focus on how the standard was violated.

Typically, if a prisoner's conscious indifference claim survives a motion to dismiss the court will seek to appoint (or locate) counsel to enable the necessary factual development at the summary judgment stage. In this case, Davis has had counsel, so the matter of factual development will be easier. Should the Plaintiff present expert evidence of a substantial deviation from the standard of care, the Court would have to look at expert evidence presented by the defense in determining whether there are disputed issues of material fact. The material facts might include disputed historical facts, as well as "expert" facts contained in affidavits and counter affidavits. In short, the parties should not consider the denial of the motion to dismiss as expressing any opinion on how a motion for summary judgment would be evaluated.

In order to expedite the resolution of this case, which has been pending since 2002, the Court withdraws the reference to Judge Roberts. Henceforth, all pleadings in this case shall be directed to this Court.

**IT IS SO ORDERED**.

Dated at Anchorage, Alaska, this 22nd day of May 2006.

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
United States District Judge

ORDER

F:\HOME\JUDGES\DOCS\SHARED\CV\D.AK 3002\A02-0214.004.wpd