Marilyn J. Kamm
Assistant Attorney General
Department of Law
Criminal Division Central Office
P.O. Box 110300
Juneau, AK 99811
(907) 465-3428
FAX: (907) 465-4043
Alaska Bar No. 7911105
Attorney for Defendants Hyden
& Henry

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| CHARLIE J. DAVIS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ZELMAR HYDEN, ET AL., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | Case No. A02-214 CV (JKS) |

**AFFIDAVIT OF ROGER HALE, P.A.**

STATE OF ALASKA     )
                    ) ss.
THIRD JUDICIAL DISTRICT )

I, Roger Hale, P.A., after being duly sworn and based upon my personal knowledge state that:,

1.   I am the Institutional Health Care Officer at Palmer Correctional Center. I have been employed by the Department of Corrections for the past 21

Affidavit of Roger Hale, P.A.
*Davis v. Hyden, et al.*, Case A02-214 CV (JKS)
Page 1 of 7.

years. I am a Physician Assistant. I supervise the nursing staff at PCC. I also see inmates at the Pt. MacKenzie Correctional Farm and at the Mat-Su Pretrial Facility.

2. I served in the U.S. Air Force as a corpsman from 1974-1978 where I worked in emergency rooms and on independent duty. In 1978 I received my nursing degree from the Community College of the Air Force. I received a Physician Assistant Certificate in 1980 from the University of Washington Physician Assistant School. I graduated from the University of Washington in 1982 with a B.S. in Public Health. I am certified by the National Commission on Certification for Physician Assistants, and must renew my certification every 6 years. I am licensed by the State of Alaska. I have taken ACLS (advanced cardiac life support) training every two years since 1980. ACLS training includes basic CPR and automated defibrillators. I am very familiar with implantable defibrillators, and there have been other inmates at Palmer Correctional Center that I have seen at the medical clinic with these implants.

3. In addition to my work for DOC, I have also worked for Arco and British Petroleum. I worked on the North Slope from 1985 to 1998 on a part-time basis. I treated workers with implantable defibrillators in their sixties (and younger) while I was employed there. Since 1998 I have also worked part-time at the Alaska Native Hospital/Emergency Room Center in Anchorage, Alaska.

4. I am acquainted with plaintiff Charlie Davis, Jr. I met with him on June 27, 2002, when I was asked to investigate the grievance he filed with

Affidavit of Roger Hale, P.A.
*Davis v. Hyden, et al.*, Case A02-214 CV (JKS)
Page 2 of 7.

Palmer Correctional Center. I reviewed his grievance as well as his medical records prior to meeting with him.

5. Mr. Davis wanted PCC to hire a registered nurse and a licensed practical nurse, and that they be available seven days a week and at night. PCC already had two registered nurses on its staff, Norma Tyler, R.N. and Lane Anderson, R.N. PCC also had a licensed practical nurse on its staff, Cora Benoit, L.P.N. I advised him that the issue of facility staffing could not be addressed through the filing of a prisoner grievance.

6. In his grievance Mr. Davis complained about his medical care and that it had been 27 days since he had had a PT/INR test. This test was given to him to determine the appropriate dosage of Coumadin. He believed that he needed to be tested more frequently because his "outside" physician had ordered a PT/INR test every two weeks. However, in my professional opinion he did not need to be tested that often. I had ordered that he be tested every 30 days per the community standard of care.

7. I told Mr. Davis that the staff at PCC was well-qualified to care for his condition. He had been prescribed several medications: Coumadin, Lisinopril, Prevacid, ASA, Plavix, Metoprolol, and Lipitor. In 2002 there were two Physician Assistants at PCC: myself and Roger Hughes, P.A. We work one week on, one week off shifts. We also had nurses on our staff. Once a week Dr. Jim Billman or another physician visited the facility to see inmates.

Affidavit of Roger Hale, P.A.
*Davis v. Hyden, et al.*, Case A02-214 CV (JKS)
Page 3 of 7.

8. Mr. Davis had received good, appropriate, medical care since his transfer to PCC. On April 24, 2002 PA Hughes ordered a PT/INR test after reviewing his records. On April 26, 2002, his blood was drawn for the test. PA Hughes also saw Mr. Davis on April 26, 2002, because he had some nose bleeding. He noted that he was on Coumadin and had picked his nose. There was an area of excoriation on the left nasal septal wall. PA Hughes encouraged him to avoid nose picking. PA Hughes discontinued his prescription for ASA 325 mg. He ordered ASA 81mg per the community standard of care. ASA is aspirin. Since Mr. Davis was on Coumadin, a blood thinner, PA Hughes was concerned about ASA's additional blood thinning effect. PA Hughes also instructed Mr. Davis to report any more nose bleeding to staff.

9. PA Hughes reviewed the PT/INR results on April 28, 2002. He ordered a multi-vitamin for Mr. Davis and that he have a complete blood count and PT/INR in 10 days. He ordered him to continue his Coumadin as written.

10. Four days later, May 2, 2002, I saw Mr. Davis in clinic. At that time he was complaining of left hip and leg pain for the past two weeks. He said that he thought he had worked out too hard. He had periodic cramping. I examined his hip and leg, and ordered a muscle relaxant, Flexeril, for him for three days. I also ordered heat, rest and light exercise. I told him to return as needed. Three days later, May 5, 2002, he reported he was improved from his previous visit.

Affidavit of Roger Hale, P.A.
*Davis v. Hyden, et al.*, Case A02-214 CV (JKS)
Page 4 of 7.

11. On May 8, 2002, his blood was drawn for another PT/INR. His blood pressure was also taken. It was 148/90. Dr. Billman reviewed his medical records and recommended tightening his blood pressure control since the inmate was on Coumadin.

12. On May 10, 2002, he had another blood draw for a PT/INR test.

13. On May 12, 2002, the medical staff sent to the PCC a memo regarding Mr. Davis's defibrillator. It explained that the implant regulated heart rate and rhythm and instructed them that he was not to be searched with a hand held screening wand. The memorandum was accompanied by part of his defibrillator handbook explaining what items he should avoid in more detail.

14. On May 19, 2002, I reviewed his prescription medications and the Vital Signs Flow Sheet. I noted that his prescriptions for Metaprolol and Coumadin were good through July 7, 2002. I ordered that a PT/INR be done in 30 days, and that his blood pressure and weight be checked once a month.

15. On May 30, 2002, we received a fax from the Haines Clinic.

16. On June 5, 2002, PCC received Guiac test results with negative results. This test is for occult blood. This test would have revealed occult blood if Mr. Davis had had significant nose bleeding.

17. On June 17, 2002, PA Hughes ordered that his blood be drawn for the PT/INR test. He was paged to the office for his test on June 24th and initially was a "no show." Later he appeared, and his blood was drawn.

Affidavit of Roger Hale, P.A.
*Davis v. Hyden, et al.*, Case A02-214 CV (JKS)
Page 5 of 7.

18. When I met with Mr. Davis on June 27th investigator on his grievance, I informed him that no one at this level could address his manning issue of 24 hours a day nursing staff (which was all he was asking for when I met with him.) After speaking with him for a short period of time it became clear to me that his main complaint was that he did not fully understand how to access the medical department of PCC and that was the reason why he was not receiving the medical care he felt he needed. He was failing to submit Request for Medical Care (cop-outs), required by Department of Corrections Policy and Procedure 807.02, Procedure A.2. to access medical staff.

19. I spent about 20 minutes explaining to Mr. Davis what he explicitly needed to do to obtain medical care while at PCC. I also explicitly explained to him what not to do. I explained that it was his personal responsibility to send a cop-out in writing each time he felt he needed any type of medical care. Once medical received the cop-out, it was triaged. He would then be seen by staff, if appropriate, who could prescribe lab tests and medication, refer him to the physician who visits PCC weekly, or refer him to a physician outside of the institution.

20. I also told Mr. Davis that he should not approach the medical or correctional staff while he is general population to discuss his medical needs. I explained that this can result in a violation of his privacy, and that these conversations rarely make it back to a provider (myself or PA Hughes) for the

Affidavit of Roger Hale, P.A.
*Davis v. Hyden, et al.*, Case A02-214 CV (JKS)
Page 6 of 7.

05/12/2006 09:28 FAX 9074858569

Case 3:02-cv-00214-JKS    Document 90-2    Filed 06/19/2006    Page 7 of 7
Case 3:02-cv-00214-JKS-JDR    Document 78    Filed 05/18/2006    Page 7 of 7

action he wants. I instructed him to contact the first security officer he sees (or have another person contact an officer) should he have an emergency. Security would initiate the proper emergency response. If he felt that he needed an appointment with a specialist, some unique medical care, a special procedure, or had some other medical need, that it was his sole responsibility to provide that request in writing on a cop-out. After I received the cop-out, I would then start an investigation into what needed to be done. In the end he stated that he understood what was required of him and stated that he would comply.

21. I do not recall any conversation with Mr. Davis about his implanted defibrillator. However, I am certain that I never told him that the batteries in his defibrillator were good for 20 years. I have never told any patient with an implanted defibrillator that his batteries were good for 20 years.

Further this affiant sayeth naught.

_____
Roger Hale, P.A.

SUBSCRIBED AND SWORN TO before me this 12— day of May, 2006, at Palmer, Alaska.



_____
Notary Public in and for State of Alaska
My Commission Expires: _____

DEPARTMENT OF LAW - CRIMINAL DIVISION
ATTORNEY GENERAL, STATE OF ALASKA
P.O. BOX 110300, JUNEAU, ALASKA 99811
PHONE: (907) 465-3428  FAX: (907) 465-4043

Affidavit of Roger Hale, P.A.
*Davis v. Hyden, et al.*, Case A02-214 CV (JKS)
Page 7 of 7.