Thomas A. Matthews, ABA No. 8511179
Matthews & Zahare, P.C.
431 West 7th Ave., Suite 207
Anchorage, Alaska 99501
Phone: (907) 276-1516
Facsimile: (907) 276-8955
tom.matthews@matthewszahare.com

Counsel for Plaintiff Davis

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHARLIE J. DAVIS, JR., ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> ZELMER HYDEN, et al., ) <br> ) <br> Defendants. ) <br> _____) | Case No. A02-0214 CV (JKS) |

**SUPPLEMENTAL OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff sought and was granted an opportunity to conduct additional discovery in order to completely respond to Defendants' motion for summary judgment. The discovery has now been conducted, and Plaintiff now files this supplemental brief in opposition to Defendants' motion. Unfortunately, the documentation that Plaintiff sought by way of discovery has been destroyed since this litigation began, so it is not available for the parties and the court to consider.

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                            Page 1 of 18

In this supplemental memorandum, Plaintiff will first address the defendants' spoliation of evidence, and its impact on this case.  Second, Plaintiff will discuss the recent deposition testimony of Roger Hale.  Finally, Plaintiff will once again address the issue of expert testimony, and show that the law does not require it in the circumstances of this case.  For these reasons, and the reasons stated in Plaintiff's Opposition to Defendants' Motion For Summary Judgment (Docket 91), Defendants' motion should be denied.

## I.  DEFENDANTS' SPOLIATION OF EVIDENCE

In its order dated July 6, 2006 (Docket 84), this court granted Davis an opportunity to conduct additional discovery because it recognized that Davis' opposition might benefit.  Davis sought, and was granted an opportunity to seek additional documents from the defendants relating to daily meeting minutes, consideration of his medical grievance, and his grievance appeal.  In addition, Plaintiff was granted an opportunity to depose Roger Hale, one of the principal health care providers at PCC.

Defendants have now responded to the document requests indicating that the documents requested cannot be located, and have in all likelihood been destroyed.  Since Defendants were aware that Plaintiff's complaint alleged inadequate medical care from the time it was first filed, the failure to maintain these records amounts to spoliation of evidence.  Moreover, this spoliation is detrimental to plaintiff's case

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                                 Page 2 of  18

because it deprives Davis of the opportunity to prove that Defendants' inadequate care caused him injury. For this reason, Plaintiff requests the court hold in accordance with Sweet that Defendants' care of plaintiff was medically negligent, and that it caused harm to Plaintiff.

### A.   Spoliation Shifts the Burden of Proof

Courts in many jurisdictions, including Alaska, recognize that a health care provider's failure to maintain medical records may hinder a plaintiff's ability in a medical malpractice case to prove elements of the cause of action.[1] The Alaska Supreme court has recognized an independent tort for spoliation of evidence.[2]

In *Sweet v. Sisters of Providence in Washington*,[3] the court noted that "Just as the missing records may have impaired the [Plaintiffs] ability to prove medical negligence, they would in the same way impair the Sweets' ability to prove a causal connection between any negligence and Jacobs' injuries."[4] Plaintiffs in *Sweet* alleged the plaintiff's hospital had negligently lost medical records which were critical to their medical malpractice claim against the hospital and others. The Alaska

---

[1] This court has characterized Davis' case as akin to a medical malpractice case. For this reason, spoliation of medical records should implicate the same burden shifting remedies that have been applied by other courts in both malpractice and other contexts.

[2] *Hazen v. Municipality of Anchorage*, 718 P.2d 456, 463 (Alaska 1986) (recognizing that acts of intentional spoliation of evidence can give rise to independent tort claims for intentional interference with prospective civil action).

[3] 859 P.2d 484 (Alaska 1985).

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                 Page 3 of  18

Supreme Court held the jury should be instructed that the loss of the medical records raises a rebuttable presumption of negligence on the part of the hospital. This shifts the burden of proof to the hospital to prove that it was not negligent. Moreover, the hospital "should have borne the burden of proving that Jacobs' [the injured plaintiff] injuries were not caused by the hospital's negligence."[5]

To create the rebuttable presumption approved in Sweet, the trial court must first determine the potential importance of the missing records. Second, the court must determine whether the missing evidence "sufficiently hinders plaintiff's ability to proceed."[6] Here, the spoliated documents meet these tests, so the court should shift the burden as required by *Sweet*.

### B. The Missing Records

#### 1. Daily Meeting Minutes

Defendant Mel Henry testified that during the time he was superintendent at PCC, he held "daily staff meetings."[7] These meetings typically included a

---

[4] *Sweet*, 895 P2d at 491.

[5] *Id.*

[6] *Sweet,* 895 P2d at 491; *See Also, Public Health Trust v Valcin*, 507 So. 2d 596, 599-601 (Florida 1987).

[7] *See* Exhibit 15 (Hyden Depo.) at 16.  References to Exhibits 1-14 include Exhibits previously submitted with Plaintiff's earlier briefs.  Exhibits 1-9 records were submitted with Plaintiff's Opposition to Defendant's Motion to Dismiss (Docket 47) which is incorporated by reference.  Exhibits 10 - 14 were attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Docket 91).  Exhibits 15-21 are submitted herewith.

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                              Page 4 of  18

representative of the medical staff.[8]  Formal minutes were kept of these meetings.[9] Mr. Hyden was quite certain that Davis' medical condition would have been addressed in the daily meetings:

> Q: Do you know whether or not Mr. Davis' medical condition was ever mentioned in one of your daily briefings?
>
> A. I would – I would assume and feel certain that it would be mentioned. You know, staff need to be made aware – if you have a prisoner like this in the population, there needs to be an awareness that that person exists. And I feel certain that if you look at those records, you'll see that somewhere.[10]

In his affidavit, Mr. Davis has said that he continually complained to correctional officers and others that his serious medical condition was not being properly monitored. He told those he came in contact with that his medical condition was serious, that he was not being properly attended to, and that he was suffering from spikes in his blood pressure, dizzy spells, and related problems with nose bleeds.[11] Surely, if Davis were complaining regularly to the CO's and raising concerns to the nurses in the med line as he has testified, then those concerns should have been reflected in the daily meetings. As Mr. Hyden noted, "there needs

---

[8] *See* Exhibit 15 (Hyden Depo.) at p.16.

[9] *Id.*

[10] *See* Exhibit 15 (Hyden Depo.) at p. 71.

[11] *See* Exhibit 1 (Davis Affidavit) at ¶¶ 14, 23.

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                         Page 5 of  18

to be an awareness" of prisoners like Davis, and he felt certain the daily meeting minutes would reflect that.[12] Unfortunately, the records cannot be found.

### 2. Medical Advisory Committee Record of Decision

In addition to the daily meeting minutes, there should be Medical Advisory Committee (MAC) Meeting Minutes addressing Davis' grievance. Dr. Mel Henry testified that formal meeting minutes were kept, and there would have been a formal medical record of decision regarding Davis' appeal.[13] Dr. Henry signed a letter written for him by the MAC indicating that Mr. Davis' essential health care needs were being met by the medical and security staff at PCC.[14] Unfortunately, there is simply no record of how that decision was made, what supporting facts were considered, or whether Davis' was examined as part of the process during the nearly 75 days that his appeal was pending.[15]

After Davis filed his grievance, the record of his medical treatment simply drops off the chart. There are no indications that he was examined by medical staff at PCC, that his blood pressure was monitored (despite stated concerns for the need to lower his blood pressure) and Davis' own complaints about his medical

---

[12] *See* Exhibit 15 (Hyden Depo.) at p. 71.

[13] *See* Exhibit 16 (Henry Depo.) at pp. 26-27.

[14] *See* Exhibit 10.

[15] According to Dr. Henry, it was "very possible" that one of the medical staff on the MAC examined Mr. Davis. *See* Exhibit 16 (Henry Depo.) at p. 32. Dr. Henry surmised

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                              Page 6 of 18

condition.[16] There are two possible explanations. First, Davis simply received no care despite the expectations of Defendants. Second, Davis did receive additional examinations and/or treatment and those records have been lost. Unfortunately, without the record of decision, we will never know what occurred. How the MAC staff concluded that Davis' medical needs were being adequately addressed is simply a mystery without the records.[17]

### C.     Defendants Failed to Preserve the Records

As noted previously, both defendants have testified to the existence of records relating to the medical care provided to Charlie Davis while he was incarcerated at PCC. According to Defendants' discovery responses, these records cannot be located. Apparently, the records were destroyed pursuant to a records

---

that PA Roger Hale would have examined Mr. Davis, and then come in to the MAC meeting to report his findings. *Id.*

[16] *See* Exhibit 8 (Health Care Progress Notes); *see also* Exhibit 17, (Vital signs Flow Sheet (SOA 54) (Exhibit 2 to Luban Depo.).

[17] Defendants did locate some records relating to the processing of Davis' grievance appeal. *See* Exhibit 18 (Defendants' Response to Plaintiffs' Third Request for Production) at RFP 13 (SOA 494-503). These records include the "grievance logs", a transmittal memo from the PCC Grievance Coordinator to Mel Henry, and two pages of the Health care log relating to Davis. *Id.* From the records, we can see that the MAC assigned a "researcher" named "Paul" who "denied" the appeal (SOA 503), and that it took 70 days to process the appeal after it was sent to Mel Henry (SOA 496-497). No other substance about the appeal investigation, or "research" can be gleaned from the records. In addition, Defendants supplemented their response to Request for Production No. 4 (an earlier request for production relating to policy & procedures for care), but these documents are not material to the present motion.

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                      Page 7 of 18

retention policy that only keeps records for three years, regardless of whether litigation is currently pending.[18]

Davis first asked for production of a "complete copy of all medical records" and "all files relating to grievances" relating to Mr. Davis on October 27, 2003 – approximately a year after Davis left PCC.[19] Thus, well before the three year retention policy expired, Defendants were on notice that records relating to Davis' medical treatment and grievance were sought and should not have been destroyed. Defendants' failure to preserve these records for evidence in this case amounts to spoliation.

### D. Defendants' Spoliation of Records Hinders Plaintiff's Ability to Prove Medical Negligence and Causation

Plaintiff does not agree that Medical negligence is the appropriate framework to decide this case. Nonetheless, the court has made clear that this is the test it will apply.[20] Under the circumstances, Plaintiff is left with no choice but to attempt to prove the claim through the evidence which is available.

Here, it is axiomatic that without the daily meeting minutes and MAC record, plaintiff is substantially hindered in his attempt to demonstrate the medical care he

---

[18] *See* Exhibit 18 (Defendants' Resp. to RFP 14-18 (sic)).

[19] *See* Exhibit 19 (T. Matthews letter dated October 27, 2003 to Assistant AG John Bodick, and Bodick response dated November 17, 2003.) *See also* Exhibit 20, (T. Matthews Affidavit dated May 19, 2006) at paragraph 4.

[20] *See* Order at Docket 85.

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                            Page 8 of 18

received was inadequate, and that Defendant Henry was incorrect in concluding that PCC could adequately address his medical care needs. If the daily meeting minutes were available, they might well show that Davis' condition was the subject of concern or debate among the staff. Davis has said that he regularly complained about his lack of care, and problems to the nurses dispensing medication and to the CO's during off hours.[21] There is no record of such complaints because they never made their way into the "formal" medical records. Access to those records is limited to medical staff, and they do not make records of complaints during med line.[22] In the absence of the daily minutes, Plaintiff is left to speculate about what evidence would be revealed if the daily records were available.

Similarly, the MAC records hamper Plaintiff's ability to attack Dr. Henry's conclusion that his medical needs were adequately addressed at PCC. All he has is a cursory letter sent after seventy days of "research" by an unknown investigator ("researcher") within the MAC. Dr. Henry himself had absolutely no knowledge of how the MAC decision was reached.[23] He would expect the decision might include an examination of Mr. Davis, or other records. From all appearances, the researcher was provided with nothing more than a smattering of the health care notes, and no information about Davis' implanted defibrillator, or his complaints of

---

[21] *See* Exhibit 1 at paragraphs 14-15.

[22] *See* Exhibit 21 (Hale Depo.) at pp. 126-129.

[23] *See* Exhibit 16 at pp. 22-24.

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                        Page 9 of 18

blood pressure spikes, dizziness, and nose bleeds. Indeed, it does not appear that the researcher was even provided with the Vital Care Flow sheet (showing Davis' blood pressure readings) or the results of his PT/INR tests. Under the circumstances, we are simply left to infer that Dr. Henry's staff made a bad decision based on inadequate evidence. Without the records, we will never know for certain.

## II. ROGER HALE'S TESTIMONY SUPPORTS THE CONCLUSION THAT DISPUTED FACTS PRECLUDE SUMMARY JUDGMENT

One of the main reasons for Davis' grievance was the lack of 24 hour medical care at PCC. Lack of appropriate staffing led to gaps in coverage, and an inability to provide the level of medical care necessary to care for an elderly inmate with a substantial heart problem. Hale's testimony bears this out. PCC failed to provide the continuity of care that is required.

Roger Hale is a Physician's Assistant with Palmer Correctional Center. He is the Institutional Health Care Officer, meaning he is principally in charge of the medical care for approximately 500 inmates plus correctional staff at PCC.[24] Hale has a staff of four nurses who report to him. Two nurses may be on duty any one time. Over the last 15 years, PCC has fluctuated its nursing coverage from 24 hour round the clock care, to "minimal" coverage, to the current practice of covering 18 hours per day.[25] Still, there are gaps during the night where no medical staff is on

---

[24] *See* Exhibit 21 (Hale Depo.) at pp. 8, 13.

[25] *See* Exhibit 21 (Hale Depo.) at p. 16.

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                                    Page 10 of 18

site at PCC.[26] While Mr. Hale can't remember exactly what the coverage was when Mr. Davis was at PCC, other witnesses have said the coverage was 12 hours on and 12 hours off.[27] According to Mr. Hale, there is no medical coverage during lockdown because there is little for the nursing staff to do during those hours.[28] That is, unless of course there is an emergency. Thus, there are substantially gaps in medical coverage. In addition to nursing staff, PCC has a contract physician, or employee who may come into the facility once a week or so.[29]

Davis should have been "screened" by at least the nursing staff when he was transferred to PCC. According to Hale, there is a transfer form that should document the inmate's medical condition and concerns at the time of arrival.[30] Hale was not entirely sure when the form came into existence. It may have simply been a chart entry. Either way, inmates are supposed to receive the transfer screen, and record should be made of the inmate's condition.[31] In the case of Charlie Davis,

---

[26] *See* Exhibit 21 (Hale Depo.) at p. 15.

[27] *See* Exhibit 21 (Hale Depo.) at p. 16; *see also* Exhibit 11 (Luban Depo) at pp. 12-13; Exhibit 15 (Hyden Depo.) at pp. 31-33.

[28] *See* Exhibit 21 (Hale Depo.) at p. 17.

[29] *See* Exhibit 21 (Hale Depo.) at pp. 19-20.

[30] *See* Exhibit 21 (Hale Depo.) at pp. 46-47.

[31] *See* Exhibit 21 (Hale Depo.) at pp. 46-47.

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                Page 11 of  18

there is documentation of a transfer exam at Lemon Creek in Juneau, but no documentation that he was screened at all upon arrival at PCC.[32]

During his stay in PCC, Davis was never examined by a physician, and rarely seen by even the PA's.[33] Instead, Davis was told that if he had a problem, he should "fill out a cop out" and ask for medical attention.[34] The records seem to have been periodically reviewed, but the order from Dr. Billman to tighten Davis' blood pressure control appears to have been ignored. Further, the order to conduct a PT/INR test every two weeks was unilaterally rescinded by Roger Hale (without examining Davis).[35] Although Hale believes that his change order would have been approved by Dr. Billman, there is once again no indication anywhere in the record that Dr. Billman agreed with the change.[36]

According to Mr. Hale, a 70 year old inmate like Davis who arrives at PCC as a transferee with an implanted defibrillator and seven different medications gets no medical attention unless he fills out a form and asks for it.[37] DOC policy apparently doesn't believe it's appropriate to screen an elderly heart patient any more than a

---

[32] See Exhibit 21 (Hale Depo.) at pp. 50-51.
[33] See Exhibit 1 Davis Affidavit; see also Exhibit 11 (Luban Depo) at p. 34; Exhibit 21 (Hale Depo) at p. 61.
[34] See Exhibit 21 (Hale Depo.) at 38, 95, 102, 127.
[35] See Exhibit 21 (Hale Depo.) at 61-63.
[36] See Exhibit 21 (Hale Depo.) at p. 66.
[37] See Exhibit 21 (Hale Depo.) at p. 37.

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                        Page 12 of 18

youthful offender. Instead, the onus is entirely placed upon the prisoner to make a written complaint that he needs medical attention.[38]

### III. EXPERT TESTIMONY IS NOT REQUIRED

This court has previously suggested that Plaintiff must supply expert testimony to demonstrate that the inadequate care he received at PCC was a legal cause of the injuries he claims.[39] With all due respect to the court's view, Plaintiff disagrees. Plaintiff has not alleged medical malpractice per se, but even if he had, the law does not mandate expert testimony in all such cases.

Alaska case law "requires expert testimony only when the nature or character of a person's injuries require the special skill of an expert to help present the evidence to the trier of fact in a comprehensible format."[40] "'[T]here are numerous . . . matters involving health and bodily soundness, not exclusively within the domain of medical science, upon which the ordinary experience of everyday life is entirely sufficient.'"[41] Alaska courts require "expert medical testimony to establish causal connection only where there is no reasonably apparent (as distinguished from obvious) causal relationship between the event demonstrated and the result

---

[38] *See* Exhibit 21 (Hale Depo.) at p. 127.

[39] *See* Order at Docket 85.

[40] *Choi v. Anvil*, 32 P.3d 1, 3 (Alaska 2001).

[41] *Id.* (quoting *Hougher v. Houger,* 449, P.2d 766, 769 (Alaska 1969)).

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                                       Page 13 of 18

sought to be proved.'"[42] In *Choi*, lay witnesses testified to the collision involved and that the collision caused movements and impacts upon their bodies.[43]  They testified to the resulting pain to various parts of their bodies.  On appeal, the Alaska Supreme Court found this lay testimony sufficient to establish causation:

> This lay testimony, based upon personal observation, described a situation easily understood by a jury: a rear-end automobile collision causing relatively common injuries.  These injuries manifested symptoms like pain, stiffness, and loss of strength.  Although a medical expert might have more precisely described the relationship between the impact and the effects described by the plaintiffs, the jury, using everyday experience, could readily find a causal relationship without this expert assistance.  The jury could also find the injuries resulted in compensable damages.  Because the causation and injuries were reasonably related to the impact between the automobiles, there was no need for an expert.[44]

Here, as in *Choi*, there is no need for an expert to connect Mr. Davis' injuries to the lack of care he received at PCC.  Davis was incarcerated.  He had nowhere else to go.  Defendants were in complete and total control of his health care.  The constitution obligates prison officials like defendants to provide adequate medical care because an individual like Davis has no opportunity to go to a doctor, or pharmacy, or take steps to avoid illness in the first place because of his confinement.[45]  A 70-year old prisoner with a history of heart problems with an

---

[42] *Id.* (quoting *Jakoski v. Holland,* 520 P.2d 569, 575 (Alaska 1974)).

[43] *Id.*

[44] *Id.*

[45] *Estelle v Gamble*, 428 US 97, 103 (1976).

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                                     Page 14 of  18

implanted defibrillator, whose medication is not stabilized, whose blood pressure is not monitored is at serious risk of substantial problems.  A reasonable jury could easily conclude that the failure to properly monitor Davis and provide continuity of care led to the complaints for which Mr. Davis allegedly suffered.  Thus, no expert testimony in needed in this case.

In their supporting memorandum, Defendants argue that expert testimony is a mandatory prerequisite to a Plaintiff's ability to proceed with a medical malpractice claim.  Defendants argue that expert testimony is required to establish certain elements of a medical malpractice claim -- the standard of care (duty), and breach.  This is not correct.  Caselaw demonstrates that expert testimony is not mandatory on all element of a medical malpractice claim.[46]

---

[46] For instance, *Kendall v. State*, 692 P.2d 953, 955 (Alaska 1984), cited by Defendants, only addressed the breach element of a medical malpractice claim, not the causation element.  In *Martinez v. Ha*, 12 P.3d 1159, 1161 (Alaska 2000), a medical malpractice and failure to advise case, the plaintiff failed to present evidence to rebut an expert advisory panel report on the standard of care and the trial court entered summary judgment because "'there is no fact in dispute regarding the breach of any standard of care.'"  Other elements of the claim, including causation were not discussed.  *Gerber v. Juneau Bartlett Memorial Hospital*, 2 P.3d 74, 77-78 (Alaska 2000), also dealt with the adequacy of the care, not causation, and merely stated that "when the expert advisory panel makes a finding of proper care and the plaintiff claiming negligence presents no contradictory evidence," summary judgment is appropriate.  The Court did not state that evidence from an expert was mandatory and certainly did not state such evidence was mandatory on the causation element.  The Court's discussion of legal causation on plaintiff's negligence claim in *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1114 (Alaska 2002), made no reference to the requirement of expert testimony.  When the Court discussed the plaintiff's medical malpractice claim, the Court set forth the

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                 Page 15 of  18

Even on the duty and breach elements of a medical malpractice claim, concerning which the Alaska Supreme Court has stated that expert evidence <u>may</u> be required, the Court has repeatedly noted that an exception to that principle is in non-technical situations where negligence would be evident to lay persons.[47] Courts in other jurisdictions that have addressed the need for expert testimony on the causation element of a medical malpractice case, have noted that expert evidence is not required when causation is within the common knowledge of laypersons.[48]

Here, it would be evident to a lay person that a person with an implanted defibrillator, poorly controlled blood pressure, on seven different medications, with an inconsistently monitored PT/INR test would be harmed if was not provided with adequate care. It is self evident that a failure to provide reasonable care to an elderly heart patient with complaints of dizziness could lead to severe consequences. Thus, expert evidence is not necessary to Mr. Davis' claim.

---

elements of the claim and, without specifically addressing the causation element, generally noted that it had previously held that "where negligence is not evident to lay people, the plaintiff in a medical malpractice action must present expert testimony to establish the claim." *Id.* at 1114-15.

[47] *Hymes v. Deramus*, Opinion No. 5936, at 11 (Alaska August 26, 2005); *Parker v. Tomera*, 89 P.3d 761, 766 (Alaska 2004); *D.P. v. Wrangell General Hospital*, 5 P.3d 225, 228 (Alaska 2000); *Kendall v. State*, 692 P.2d 953, 955 (Alaska 1984)(citing *Clary Insurance Agency v. Doyle*, 620 P.2d 194, 200 (Alaska 1980)).

[48] *Harvey v. Fridley Medical Center, P.A.*, 315 N.W.2d 225, 227 (Minn. 1982); *Lipsius v. White*, 458 N.Y.S.2d 928, 933 (N.Y. App. Div. 1983); *Ellis v. United States*, 484 F. Supp. 4, 11 (D.S.C. 1978).

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                 Page 16 of 18

## IV. CONCLUSION

Defendants have deprived Plaintiff of the opportunity to fully examine the evidence relating to his medical treatment, and consideration of his medical needs while he was at Palmer Correctional Center. Records of Superintendent Hyden's Daily Meetings have been destroyed. Records that Mr. Hyden expected to include reference to Charlie Davis and his serious medical condition. Similarly, records of the Medical Advisory Committee which considered Mr. Davis' grievance appeal have also gone missing. The failure to preserve these records amounts to spoliation of evidence, and the court should impose the burden shifting sanctions required by the Alaska Supreme Court in *Sweet.* Finally, Expert testimony is unnecessary to support Plaintiff's claim. This is particularly true in this case where all of the evidence relating to Plaintiff's medical care is unavailable.

DATED this 13th day of October 2006, at Anchorage, Alaska.

         MATTHEWS & ZAHARE, P.C.
         Counsel for Plaintiff Davis


         By:__s/ Thomas A. Matthews_____
          Thomas A. Matthews, ABA No. 8511179
          431 West 7th Ave., Suite 207
          Anchorage, Alaska 99501
          Phone: (907) 276-1516
          Facsimile: (907) 276-8955
          tom.matthews@matthewszahare.com

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                      Page 17 of 18

CERTIFICATE OF SERVICE

I certify that on 13th day of October 2006
a copy of the foregoing document was
served by electronic mailing to:

Marilyn J. Kamm, Esq.
Assistant Attorney General
State of Alaska, Dept. of Law
Criminal Division Central Office
P.O. Box 110300
Juneau, AK 99811


s/Thomas A. Matthews _____

Supplemental Opposition to Defendant's Motion for Summary Judgment
*Davis v. Hyden, et al.*, Case No. A02-214 CI
TAM:jlw\103-2\SuppOppMFSJ                                                                 Page 18 of  18