Marilyn J. Kamm
Assistant Attorney General
Department of Law
Criminal Division Central Office
P.O. Box 110300
Juneau, AK  99811
(907) 465-3428
FAX:  (907) 465-4043
Alaska Bar No. 7911105
Attorney for Defendants Hyden
& Henry

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| CHARLIE J. DAVIS, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ZELMAR HYDEN, ET AL., | ) |
| | ) |
| Defendants. | ) |
| _____ | )   Case No. 3:02-CV-214-JKS |

REPLY TO OPPOSITION AND SUPPLEMENTAL OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT

I.  PLAINTIFF'S CASE FAILS BECAUSE NO EXPERT SUPPORTS HIS CLAIMS.

That no expert supports plaintiff's claims in this litigation is fatal to his case. As this court noted in its Order at docket 94, Eighth Amendment violations based upon deliberate indifference to medical needs incorporate an action for medical malpractice. This case involves medical issues that are not obvious to a layman, and an expert is needed to define the standard of care and whether that standard was breached.

Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 1 of 11.

Plaintiff's reliance upon *Choi v. Anvil*, 32 P.3d 1 (Alaska 2001) is misplaced. In *Diaz v. Safeway*, Case No. 3:05-cv-0001-TMB Judge Burgess distinguished *Choi*, ruling that the causal relationship between plaintiff's accident and alleged injuries were not within the common knowledge and experience of the average person. That case involved a woman who slipped and fell at Safeway. She claimed that her pregnancy complications and back injury resulted from that fall. The court ruled that plaintiff was not qualified to offer testimony that her medical conditions were causally related to her accident.

Like *Diaz*, Davis is unqualified to testify that his medical care at PCC was inadequate. He is unqualified to testify about his medical condition that required seven prescription medications and required blood clotting studies. He is unqualified to testify about the standard of care, and whether that standard was breached. *See Diaz v. Safeway, supra*.

The defendants have submitted the only expert testimony before this court. Henry Luban, M.D., has testified that plaintiff received appropriate care during his incarceration at Palmer Correctional Facility consistent with correctional and community medicine standards. *See* Affidavit of Henry Luban, M.D., Defendants' Exhibit D to their Motion for Summary Judgment. Davis's blood coagulation was monitored monthly, which was an acceptable frequency given good control. Additionally, his blood pressure was monitored regularly and was generally at an acceptable level. *Id.* There were no objectively demonstrable untoward medical

Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 2 of 11.

outcomes or events because of failure to provide medically necessary care. *See* Exhibit D. Plaintiff has offered no expert testimony to dispute this evidence.

Plaintiff's claim at page 3 of his supplemental opposition that "Defendants' inadequate care caused him injury" confuses the issues before the court. Defendants are not health care providers. Zee Hyden was Superintendent at Palmer Correctional Center. *See* Exhibit 15, Hyden depo at p. 12. Mel Henry, who has a Ph.D. in social work and social gerontology, was a health care administrator at the Department of Corrections.[1] *See* Exhibit 16, p. 12. Neither one provided plaintiff with medical care; there was medical staff at the Department of Corrections to do that. *See* Exhibit 15, p. 14; Exhibit 16, p. 13.

This is a civil rights action filed pursuant to 42 U.S.C. 1983. There is no *respondeat superior* in civil rights cases. Since neither Mr. Hyden nor Mr. Henry are health care providers, they did not personally provide Davis with any medical care. They reasonably relied upon the judgment of the DOC medical staff and advisory committee that Davis was receiving appropriate medical care. There is no evidence that they were deliberately indifferent to plaintiff's medical condition and that their reliance upon medical staff was unreasonable. Defendants are entitled to an order of summary judgment.

---

[1] The statement at page 4 of plaintiff's supplemental opposition that *Mel Henry* testified that when he was superintendent at PCC he had daily staff meetings is in error. Mel Henry was never superintendent at PCC. Plaintiff has cited Zee Hyden's deposition and presumably meant Zee Hyden since he refers to Hyden's deposition.

Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 3 of 11.

II.   THERE WAS NO SPOLIATION OF EVIDENCE IN THIS CASE.

The State of Alaska has a three year retention policy for minutes of meetings that are not policy making. *See* Exhibit E. Plaintiff did not request these minutes until he deposed the defendants in 2006. The unavailability of these minutes did not prevent plaintiff from retaining an expert to make a *prima facie* case of inadequate medical care. Davis's complete DOC medical file, all 208 pages, was produced to him. *See* Plaintiff's Exhibit 19, p. 2. The minutes were not part of a prisoner's medical file required to be maintained pursuant to Policy and Procedure 807.06. *See* Exhibit F.

In *Zaverl v. Hanley*, 64 P.3d 809 (Alaska 2003) the Alaska Supreme Court distinguished *Sweet v. Sisters of Providence of Washington*, 895 P.2d 484 (Alaska 1995).[2] In that case, Zaverl's estate filed a medical malpractice suit against Zaverl's surgeon and pulmonologist. The plaintiff claimed that the defendants violated 7 AAC 12.770(e) by failing to prepare a discharge summary within fifteen days of discharge from the hospital. The estate claimed that the delay hindered its ability to present its case, and that the trial court erred by failing to impose a presumption of negligence and causation. The supreme court disagreed.

The *Sweet* court held that in a medical malpractice lawsuit a regulatory breach regarding hospital records could give rise to a presumption of negligence. *Zaverl v. Hanley*, 64 P3d at 821, citing *Sweet*, 895 P.2d 490-492. A presumption of

Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 4 of 11.

negligence is appropriate when the court is convinced that "the absence of the records hinders [the plaintiff's] ability to establish a *prima facie* case," and "the **essential** medical records are missing through the negligence or fault of the adverse party." *Id*., at 487-488, 490 (emphasis added).

Unlike *Sweet*, *Zaverl*'s discharge summary was only prepared late. No information was missing or withheld. Unlike *Sweet*, *Zaverl* failed to make out a specific showing of prejudice. Zaverl did not explain what information it expected to find in the discharge summary that was not there, nor did it claim that the delay impaired its experts' analyses. *Zaverl,* 64 P.3d at 821. Moreover, any possible error was harmless. Presumptions of fault are rebuttable, and the defendants offered evidence to rebut any presumption arising out of the delay in preparing the discharge summary. *Zaverl*, 64 P.3d at 821, fn. 37.

The present case is distinguishable from *Sweet* because none of Davis's essential medical records are missing. The minutes requested by plaintiff and unavailable did not hinder his ability to establish a *prima facie* case of medical negligence. Any expert could have reviewed his DOC medical records and given an opinion regarding the standard of care and the adequacy of his treatment while he was incarcerated. *See Zaverl v. Hanley, supra.*

Plaintiff's claims about the alleged significance of the non-retained staff

---

[2] Plaintiff's citation to *Sweet* in footnote 3 is incorrect.
Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 5 of 11.

meeting minutes is based upon speculation and not Hyden's actual testimony. Hyden testified that if there was something of significance medically, PA Hale, the most senior medical person at Palmer Correctional Center, would inform the staff at a meeting. *See* Plaintiff's Exhibit 15, Hyden depo, at p. 15. Hyden was later asked if Davis's condition were ever mentioned in ***one*** of the staff meetings. *Id*., p. 71. Hyden responded that he assumed that it was. *Id*.[3] Hyden was not asked if Davis's condition were addressed daily at the meetings, nor did he testify that it was. The fact that PA Hale may have mentioned Davis to Hyden at one of the managerial meetings, or that a correctional officer may have once mentioned Davis at a morning meeting, is irrelevant to the issues (1) whether Hyden was deliberately indifferent to Davis's medical care and unreasonably relied upon Hale's opinion that Davis received adequate medical care at PCC; and (2) whether Davis's medical care at PCC was adequate.

Plaintiff has failed to explain (1) what information he expected to find in the MAC minutes that was not available elsewhere and (2) how that information would show that Henry unreasonably relied upon MAC's opinion that Davis received adequate treatment at PCC. Information about the MAC's opinion was still available to plaintiff. PA Hale identified the composition of MAC (Exhibit 21, Hale depo at 112-113); plaintiff could have asked them directly about their opinion of his treatment

---

[3] PA Hale clarified that the daily staff meetings involved the superintendent and the correctional staff. He explained that he only met with the superintendent in weekly managerial staff meetings. *See* plaintiff's exhibit 21, depo of Hale, p. 122.

Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 6 of 11.

and their decision on the grievance appeal. Had plaintiff chosen to do so, he could also have asked Ms. Bonnie Paul about her research for the committee. *See* Exhibit 21, depo of Hale at 111-112. Although plaintiff says that he might have been examined at the request of MAC, one would expect that if he had been examined at their request that he would remember that fact and that the examination results would also be part of his individual medical file. PA Hale testified that DOC had a complete set of Davis's progress notes. See Exhibit 21, Hale depo at 50. There is no evidence that any of Davis's DOC medical records are missing.

III.   PLAINTIFF'S DECISION NOT TO SEEK MEDICAL CARE AT PCC.

Plaintiff's statement at page 6 of his supplemental opposition that "the record of his medical treatment simply drops off the chart" after he filed his grievance ignores the fact that his medical records show that the medical staff continued to monitor his prescription medication and blood coagulation (*See* Exhibit G, plaintiff's Health Care Progress Notes)[4] and that he was seen by the nursing staff **several times daily.** *See* discussion, *infra*. More importantly, it ignores the fact that plaintiff decided not to seek any further medical care at PCC. In fact, he sought little, if any, medical care for the remainder of his imprisonment, even after he was transferred back to Lemon Creek Correctional Center. See Exhibit G, pp. 7-12.

---

[4] There are medical staff entries on his progress notes for the following dates after plaintiff filed his grievance: June 17, 2002; June 24, 2002; June 28, 2002; July 3, 2002; July 11, 2002; July 12, 2002; July 29, 2002; August 14, 2002; August 16, 2002; August 23, 2002; August 26, 2002; September 20, 2002; September 22, 2002; October 22, 2002.

Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 7 of 11.

Davis testified that he never sought medical care after he filed his grievance because he was upset that staff told him (on April 26, 2002)[5] that his nosebleeds were caused by picking his nose.

> Q. So did you ever ask to be seen by medical staff for these nosebleeds?
> A. Yes
> Q. After that first time?
> A. After the second time; the first time at Lemon Creek, and then up there in Palmer.
> Q. Right. And then you were seen in Palmer?
> A. And they gave me nose drops and said that I was picking my nose.
> Q So did you ever—**is it your testimony that you then never requested to see medical staff?**
> A. **Not after – not after that. It wouldn't do me any good. He'd tell me the same thing.**
> Q. And you never submitted another copout reporting nosebleeds to Palmer?
> A. I submitted my grievance.
> Q. Okay. **But in response to my question, you never submitted another copout?**
> A. **Not after I – not after I filed my grievance, I didn't submit no more copouts**.

See Exhibit H, Davis depo at p. 124.

> Q. **And I think that we covered this before, but even though you were having all these symptoms, at some point you just decided not to seek any more medical care from Palmer?**
> A. **They flatly told me I was wasting my time, that they weren't going to change anything. They was going to do what they wanted to do.**
> Q. Who told you that?
> A. The CO that interviewed me on my grievance and grievance appeal.
> Q. But what about the medical staff?

---

[5] See Exhibit G, p. 5.

Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 8 of 11.

      A.     I didn't see any medical staff except that one PA that one time up there at Palmer. And whenever he come up, it was just – he interviewed me on the grievance there. And, actually, he's the one come up and saying, "You are picking your nose, and it's causing your nosebleed." ….

Exhibit H, Davis depo at 177. [6]

PA Hale testified that when he met with the inmate on June 27th he explained to him how to access medical care by submitting a copout. He explained that it was his personal responsibility to send a cop-out in writing each time he felt he needed any type of medical care. Once medical received the cop-out, it was triaged. He would then be seen by staff, if appropriate, who could prescribe lab tests and medication, refer him to the physician who visits PCC weekly,[7] or refer him to a physician outside of the institution. *See* Affidavit of Hale at docket 78, p. 6. PA Hale specifically told Davis not to approach the medical or correctional staff while he was in general population to discuss his medical needs. He explained that those conversations rarely made it back to him or PA Hughes.

---

[6] Plaintiff's testimony that (1) he didn't see any medical staff at PCC except "that one PA" and (2) that the PA he saw for his nosebleed is the same PA who interviewed him about his grievance is incorrect. There were two Physician Assistants at PCC in 2002: Roger Hale and Roger Hughes. Plaintiff saw them both, at separate times, in clinic. PA Hughes saw Davis on April 26, 2002 for nosebleeds. (PA Hughes also reviewed plaintiff's medical chart within 2 days of his arrival at PCC and ordered blood clotting tests. *See* Exhibit G, p. 5.) PA Hale saw Davis on May 2, 2002, for hip pain and interviewed Davis on June 27, 2002, about his grievance. *Id.*

[7] These physicians also reviewed all laboratory results every time they came to the facility. *See* Exhibit 21, Hale depo, at 83. They also reviewed inmates' charts.

Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 9 of 11.

Although Davis did not ask to be seen by the medical staff after he was interviewed by PA Hale, he was seen multiple times on a daily basis by the nursing staff when they distributed medication to him.  Plaintiff's exhibit 21, Hale depo at 126.  PA Hale relies upon the nurses' observation of the inmates and their judgment about the seriousness of their condition.  They are trained to deal with emergencies; for routine matters, they tell the inmates to submit a cop-out to be seen at the clinic.  It was Davis's responsibility to submit a cop-out.  He chose not to do so.  His claim that he received inadequate medical care at PCC is without merit.

## CONCLUSION

Defendants are entitled to an order of summary judgment.  No expert supports plaintiff's claim that his medical care at Palmer Correctional Center was inadequate.  None of plaintiff's medical records are missing.  There is no evidence that Messrs. Hyden and Henry were deliberately indifferent to plaintiff's medical care and that they unreasonably relied upon the medical staff opinions that Davis received appropriate medical care.

Dated this 30th day of October, 2006, at Juneau, Alaska.

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By: s/Marilyn J. Kamm, ABA 7911105
State of Alaska
Department of Law
Criminal Division Central Office
PO Box 110300
Juneau, AK  99811
Phone: (907) 465-3428

Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 10 of 11.

Fax: (907) 465-4043
Marilyn_Kamm@law.state.ak.us

I certify that on the 30th day of
October, 2006, a copy of the foregoing
Document was served electronically on:

Thomas Matthews
Matthews & Zahare
431 W. 7th Ave, Suite 207
Anchorage, AK  99501

By: s/Marilyn J. Kamm, ABA 7911105
State of Alaska
Department of Law
Criminal Division Central Office
PO Box 110300
Juneau, AK  99811
Phone: (907) 465-3428
Fax: (907) 465-4043
Marilyn_Kamm@law.state.ak.us

Reply to Opposition and Supplemental Opposition
*Davis v. Hyden, et al.*, Case 3:02-cv-214-JKS
Page 11 of 11.